**Calvin A Knickerbocker**, OSB # 050110
knickerbocker@sagarialaw.com
SagariaLaw, P.C.
1500 NW Bethany Blvd
Suite 200
Beaverton OR 97006

Attorney for Debtor Becky Lee Bergeron

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>**BECKY LEE BERGERON,**<br><br>           Debtors. | )  Bankr. Case No.: 13-31910-elp13<br>)<br>)  Chapter 13<br>)<br>)  **MOTION TO AUTHORIZE ENTRY INTO LOAN**<br>)  **MODIFICATION WITH CITIMORTGAGE, INC.**<br>)<br>)<br>) |

      COMES NOW debtor Becky Lee Bergeron (hereinafter "Debtor") by and through her attorney of record, Cal Knickerbocker, and moves the Court for an order authorizing Debtor to enter into a Loan Modification Agreement with creditor CitiMortgage, Inc. (hereinafter "Citi").

      The Loan Modification Agreement serves to amend and supplement the underlying note and deed pertaining to Citi's claim secured by real property commonly known as 12459 North West Devonmoor Avenue, Banks, Oregon 97106 (hereinafter "Property").  A copy of the Loan Modification Agreement is attached hereto as Exhibit A.

      WHEREFORE, Debtor respectfully requests the Court grant Debtor's Motion and authorize Debtor to enter into the Loan Modification Agreement with Citi.

                                                                                 Respectfully submitted:
                                                                                **SAGARIA LAW, P.C.**

Dated:  January 3, 2014                          By:    */s/ Cal Knickerbocker, Esq.*
                                                                                     Cal Knickerbocker, Esq.
                                                                                      Attorney for Debtor

## CERTIFICATE OF SERVICE

I hereby swear that on January 3, 2014, I served a copy of the foregoing - **MOTION TO AUTHORIZE ENTRY INTO LOAN MODIFICATION WITH CITIMORTGAGE, INC.** by mailing a copy of this document, by United States first class mail, postage prepaid, addressed to the following:

Citibank, NA
Attn: Michael Corbat, CEO
701 East 60th Street North
Sioux Falls, SD 57104

CitiMortgage, Inc.
Attn: Michael Corbat, CEO
PO Box 6030
Sioux Falls, SD 57117-6030

The Bankruptcy Court's electronic records show that the following persons will be served electronically when the above-identified document is filed:

Wayne Godare
c0urtmai1@portland13.com

CAL A KNICKERBOCKER on behalf of Debtor Becky Lee Bergeron
cal@suburbanlawgroup.com, sagarialaworegon@gmail.com

US Trustee, Portland
USTPRegion18.PL.ECF@usdoj.gov

                                              Dated:  January 3, 2014

                                          `

                                          /s/ Calvin Knickerbocker Esq
                                          Calvin Knickerbocker, OSB #050110
                                          Attorney for Debtor



November 18, 2013

CAL A KNICKERBOCKER ATT AT LAW
CAL KNICKERBOCKER
1915 NW Amberglen Parkway
BEAVERTON, OR 97006

RE:      BECKIE BERGERON

Case #:   13-31910
Loan #:   9000024043

Property Address: 12459 NORTH WEST DEVONMOOR AVENUE BANKS, OR 97106

Dear CAL KNICKERBOCKER,

We are sending you the following information in response to your client's interest in obtaining a loan modification. Please forward the following information to your client, if you deem appropriate:

Enclosed is your Loan Modification Agreement. Please take the time to thoroughly read and understand this document; you will need to have your signatures notarized before returning the Agreement to us.

**ALL OF THE SIGNED AND NOTARIZED MODIFICATION DOCUMENTS MUST BE RETURNED AND RECEIVED BY CMI NO LATER THAN DECEMBER 18, 2013.**

**IF THE DOCUMENTS ARE NOT RECEIVED BY THAT DATE, THERE WILL BE NO EXTENSIONS OF TIME GRANTED, AND YOUR FILE WILL BE CLOSED WITHOUT FURTHER NOTICE OR CONSIDERATION.**

*In addition, you will be required to obtain court approval or court notification fully docketed before the modified terms can go into effect. Once court approval and/or notification has been docketed, your mortgage will be permanently modified. The existing loan and loan requirements remain in effect and unchanged pending court approval within 15 business days from the date of this letter. If court approval or docketed notification is not obtained by CitiMortgage, Inc. within the specified timeline, you will no longer be eligible for a loan modification and the offered terms will be declined. Court approval or docketed notification of modified terms is required by CitiMortgage, Inc. during an active Bankruptcy action.*

Exhibit A

We have summarized the proposed terms of the Modification Agreement and demonstrated the changes pending adjustment to the existing terms and balances:

| **Existing Terms:** | **Modified Terms:** | **Effective Dates:** |
|---|---|---|
| Due Date: 11/01/10 | Modified Due Date: 01/01/14 | 12/01/13 |
| Maturity Date: 07/01/37 | Modified Maturity Date: 12/01/53 | 12/01/13 |
| Current Unpaid Principal Balance: $197,383.55 | Modified Unpaid Principal Balance: $212,821.02 | 12/01/13 |
| Current Principal and Interest Amount: $1,060.14 | Modified Principal and Interest Amount: $644.48 | 12/01/13 |
| Current Fixed Interest Rate: 4.50% | Modified Fixed Interest Rate: 4.375% | 12/01/13 |
| Current Escrow Advance (Balance): $10,626.51 | Modified Required Escrow Balance: $1,334.17 | 12/01/13 |

$33,390.58 in delinquent Interest has been added to your Principal balance, in addition to $10,626.51 in escrow amounts required to date.

For Total Principal, Interest, Taxes, and Insurance payment (PITI) please add $355.78 for escrow deposits.

Therefore your new PITI payment will be $1,000.26 effective 01/01/14. **Escrow amounts are subject to change.**

If your property is in a Standard Flood Hazard Area ("Flood Zone"), you will be required to purchase flood insurance if you do not currently have it.

The overnight delivery for CitiMortgage, Inc. is:

CitiMortgage, Inc.
Attn: PriyadarshiniP
**Loss Mitigation, Dept 0010**
1000 Technology Dr.
St. Louis, MO  63368-2240

If you have any further questions please contact me directly at **866-613-5636**.

Thank you in advance for your cooperation.

Sincerely,


PriyadarshiniP
Loss Mitigation Dept.

# Exhibit A

 **HELPING YOU STAY IN YOUR HOME.**

 MAKING HOME AFFORDABLE

*You may be able to make your payments more affordable.*
*Act now to get the help you need!*

November 18, 2013

BECKIE BERGERON
12459 NW DEVONMOOR AVE
BANKS OR, 97106-6011

**Loan #:** 9000024043
**Property Address:** 12459 NORTH WEST DEVONMOOR AVENUE

BANKS, OR 97106

Dear BECKIE BERGERON,

**Congratulations!** You are eligible for a Home Affordable Modification. If you comply with the terms of the Home Affordable Modification trial period plan, we will modify your mortgage loan and waive all prior late charges that remain unpaid.

The enclosed Home Affordable Modification Agreement ("Modification Agreement") reflects the proposed terms of your modified mortgage.

**How to Accept This Offer:**

**STEP 1** **COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE**

To accept this offer, you must sign and return both copies of the Modification Agreement to us in the enclosed, pre-paid envelope by December 18, 2013. If the Modification Agreement has notary provisions at the end, you must sign both copies before a notary public and return the notarized copies to us. We encourage you to make a copy of all documents for your records. If you do not send both signed copies of the Modification Agreement by the above date, you must contact us if you still wish to be considered for this program and have your loan modified.

**STEP 2** **CONTINUE TO MAKE YOUR TRIAL PERIOD PAYMENTS ON TIME**

Be certain to make any remaining trial period payments on or before the dates they are due. If the trial period payments are made after their due dates or in amounts different from the amount required, your loan may not be modified. If your final Trial Period Plan payment is received after the 15th of the month, but before the 1st of the following month, then the effective date of the Modification Agreement will be postponed one month. That may result in a delay of the modified interest rate, an increase in the delinquent interest capitalized, and you will not be entitled to any incentive payment accrual for that month.

To better understand the proposed terms of your modified mortgage, please read the attached summary of your modified mortgage and the Modification Agreement.

Once your first mortgage is permanently modified under HAMP if you have a second mortgage on the same property, you may be eligible for a modification on your second mortgage under the Second Lien Modification Program (2MP). Please visit www.MakingHomeAffordable.gov/programs/second-mortgage-help/Pages/default.aspx to see if your second mortgage servicer is participating in 2MP. If your second mortgage servicer is participating, you should hear from them within 60 days. If not, please contact them directly to see if you are eligible for a modification.

We look forward to hearing from you no later than December 18, 2013.

Sincerely,

Waveland Dantzler

# Exhibit A

The *Making Home Affordable Program* was created to help millions of homeowners refinance or modify their mortgages. As part of this program, we – your mortgage servicer – and the Federal Government are working to offer you options to help you stay in your home.

Attachments: *Summary of Your Modified Mortgage, Two copies of the Modification Agreement*

**SUMMARY**   Here is a summary of your modified mortgage.

**NEW PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. In addition, your mortgage insurance premium may increase as a result of the higher mortgage loan balance. **If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.**

**INTEREST RATE.** The interest rate on your modified loan will be adjusted as noted in the attached Modification Agreement in Section 3.C.

**TERM EXTENSION.** To reduce your mortgage payment, we will extend the term of your mortgage. This means we will spread your payments over a longer period.

**DEFERRAL OF PRINCIPAL.** To further reduce your mortgage payment, we will defer collection of and not collect interest on $33,010.48 of your outstanding principal. You will not be required to make monthly payments on that portion. This portion of principal will be due when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due.

**PRINCIPAL FORGIVENESS.** To further reduce your mortgage payment, we will forgive a portion of your outstanding principal equal to $0.00. You will never be required to repay this amount. However, there could be income tax consequences related to this forgiveness, and you should consult a tax advisor.

**PRINCIPAL REDUCTION ALTERNATIVE.** You may be eligible to have some of your principal forgiven on a deferred basis. If you make your monthly mortgage payments on time, we will forgive $0.00 of the principal balance of your loan each year on the anniversary of your first trial period payment date for three years. You will lose this benefit if your modified loan loses good standing, which means that the equivalent of three full monthly payments are due and unpaid on the last day of any month, at any time during this three-year period, including all accrued and unapplied amounts, even if the mortgage loan is later brought current. Any principal forgiveness will be reported to the Internal Revenue Service and may have tax consequences. Therefore, you are advised to seek guidance from a tax professional. Please contact us at (855)843-2549, EXT. 0340216 if you do not want principal forgiveness, we may have other modification options for you.

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. CitiMortgage, Inc. will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that CitiMortgage, Inc. must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be $355.78. This amount is included in the loan payment noted in Section 3.C. of the enclosed Modification Agreement; you do not need to remit this amount separately.

**ESCROW SHORTAGE.** Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of $1,334.17. You may pay this amount over a five-year (60 months) period. This monthly payment has already been included in the monthly escrow payment stated above. **If you wish to pay the total shortage now in a lump sum, please contact us. Paying this amount now in a lump sum will reduce your new monthly mortgage**

Exhibit A

**payment.** [Servicer may include alternative provisions to deal with an escrow shortage in accordance with applicable law.]

**PAYMENT SCHEDULE.** The enclosed Modification Agreement includes a payment schedule in Section 3.C. showing your payment plan for the life of your modified loan after the trial period.

**FEES.** There are no fees or other charges for this modification.

 Here is a summary of your modified mortgage.

**REPRESENTATIONS.** Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth therein, including, but not limited to, the "My Representations" section, are true and accurate. If you have any questions, please contact us (855)843-2549, EXT. 0340216.

**BORROWER INCENTIVE.** If you make your monthly mortgage payments on time, you will accrue a monthly benefit equal to $83.33 [the lesser of: (i) $83.33 or (ii) one-half of the reduction in the monthly mortgage payment]. As long as your mortgage loan does not lose good standing, which means that the equivalent of three full monthly payments are due and unpaid on the last day of any month, we will apply your accrued monthly benefit to your mortgage loan and reduce your principal balance after each of the first through fifth anniversaries of the month in which the trial period plan is executed. If your modified loan loses good standing at any time during this five-year period, you will lose all accrued but unapplied principal reduction benefits and will no longer be eligible to accrue additional principal reduction benefits even if the mortgage loan is later brought current.

Remember, you can reach me at (855)843-2549, EXT. 0340216, Monday - Thursday 7:00 a.m. - 8 p.m. CT, Friday 7:00 a.m. - 5:30 p.m. CT, and Saturday 7:00 a.m. - 4:00 p.m. CT, or email me at waveland.d.dantzler@citi.com
Sincerely,

Waveland Dantzler
Homeowner Support Specialist
(855)843-2549, EXT. 0340216
waveland.d.dantzler@citi.com
CitiMortgage, Inc.
Homeownership Support Team
PO BOX 790006
St Louis, MO 63179

NOTICES:

CALLS ARE RANDOMLY MONITORED AND RECORDED TO ENSURE QUALITY SERVICE.

Hours of operation provided reflect general hours for the Homeowner Support Specialist unit.

If contacting your Homeowner Support Specialist through email please do not include confidential information. E-Mail communication is randomly monitored to ensure quality service.

This is an attempt to collect a debt and any information obtained will be used for that purpose.

If an attorney represents you, please refer this letter to your attorney and provide us with the attorney's name, address and telephone number.

**To the extent your obligation has been discharged or is subject to an automatic stay of a bankruptcy order under Title 11 of the United States Code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or an attempt to collect any such obligation.**

# Exhibit A

**The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Office of the Comptroller of the Currency, Customer Assistance Group, 1301 McKinney Avenue - Suite 3450, Houston TX 77010.**

If you have questions about the program that your servicer cannot answer or need further counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). The Hotline can help with questions about the program and offers free HUD-certified counseling services in English and Spanish.

**After Recording Return To:**
CitiMortgage, Inc.
1000 Technology Drive, MS 420R
O'Fallon, MO 63368
Doc Prep/Booking & Closing

This document was prepared by The Modification Team
CitiMortgage
1000 Technology Drive, MS 420R
O'Fallon, MO 63368-2240

## HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower(s) ("I"): BECKIE BERGERON. AN UNMARRIED WOMAN
Lender or Servicer ("Lender"): CitiMortgage, Inc.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 06/20/07
Loan Number: 9000024043
Property Address ("Property"): 12459 NORTH WEST DEVONMOOR AVENUE BANKS, OR 97106
Legal Description: As per your Original Loan Documents

If my representations and covenants herein continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:
    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D. I have provided documentation for **all** income that I receive (and I understand that I am not

Exhibit A

required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

1 If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. If prior to the Modification Effective Date (as defined in Section 3), the Lender determines that any of my representations herein are no longer true and correct or any covenant by me has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 12/01/13 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 01/01/14.

    A. **Unpaid Principal Balance.** As of 12/01/13, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $246,308.48 consisting of the unpaid amounts loaned to Borrower, previously deferred amounts, if any, plus any interest and other amounts capitalized.

    B. **Waived or Forgiven Late Charges.** For and in consideration of the modification of the loan as described herein, Lender has agreed to waive or forgive accrued, unpaid late charges subject to the Borrower's compliance with the terms of this Agreement. The total amount of accrued, unpaid late charges waived or forgiven is U.S. $106.00.

    C. **Deferred Principal Balance.** For and in consideration of the modification of the loan as described herein, Lender has agreed to defer a portion of the Unpaid Principal Balance in an amount equal to $33,010.48 ("Deferred Principal Balance"). The Deferred Principal Balance, if any, is in addition to the Modified Principal Balance and shall continue to be due and owing by Borrower to Lender; provided, however, Lender agrees that for so long as Borrower makes the principal and interest payments in a timely manner and ultimately pays the Deferred Principal Balance to the extent obligated under the terms of the Note or Security Instrument, which if not sooner demanded, shall be due and payable upon the earlier of any voluntary loan payoff or on the Maturity Date, when the final balloon payment will become due and payable. Lender will not seek to enforce its security interest under the terms of the Security Instrument solely for failure to pay the Deferred Principal Balance. Any deferred principal forgiveness will be reported to the Internal Revenue Service and may

Exhibit A

have tax consequences. Therefore, you are advised to seek guidance from a tax professional.

D. **Principal Reduction Alternative.** You qualify for a total Principal Reduction Alternative in the amount of $0.00. You may be eligible to have some of your principal forgiven on a deferred basis. If you make your monthly mortgage payments on time, we will forgive $0.00 of the principal balance of your loan each year on the anniversary of your first trial period payment date for three years. You will lose this benefit if your modified loan loses good standing, which means that the equivalent of three full monthly payments are due and unpaid on the last day of any month, at any time during this three year period, including all accrued and unapplied amounts, even if the mortgage loan is later brought current. Any principal forgiveness will be reported to the Internal Revenue Service and may have tax consequences. Therefore, you are advised to seek guidance from a tax professional.

E. **Modified Principal Balance.** Borrower acknowledges that the Modified Principal Balance payable under the Note and the Security Instrument shall be calculated as set forth below:

| | | |
|---|---|---|
| i. | Principal Balance | $197,383.55 |
| ii. | Accrued unpaid Interest | $33,390.58 |
| iii. | Accrued unpaid late charges | $106.00 |
| iv. | Advances regarding delinquent real estate taxes or to pay insurance premiums | $10,626.51 |
| v. | Appraisal fees, attorneys fees, costs, foreclosure or other legal expenses and advances regarding prior lien-holder or other claims | $4,801.84 |
| vi. | Previously deferred amounts | $0.00 |
| | Total (the "Unpaid Principal Balance" from Section 3(A)) | $246,308.48 |

Less:
| | |
|---|---|
| Forgiven Late Charges from Section 3(B) | $106.00 |
| Deferred Principal Balance from Section 3(C) | $33,010.48 |
| Principal Reduction from Section 3(D) | $0.00 |
| Appraisal fees, attorneys fees, costs, Foreclosure or other legal expenses and advances Regarding prior lien-holder or other claims | $370.98 |

Plus:
| | |
|---|---|
| Advances to establish initial escrow account, if any | $0.00 |
| Total (the "Modified Principal Balance") | $212,821.02 |

F. **Repayment Terms.** Borrower promises to pay the Modified Principal Balance, plus interest, to the order of Lender as set forth below:

1). The Maturity Date, as hereinafter defined, is 12/01/53. If on the Maturity Date Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

Exhibit A

2). The interest rate will begin to accrue as of 12/01/13 and the first new monthly payment on the Modified Principal Balance will be due on 01/01/14.

3). $33,010.48 of the Unpaid Principal Balance shall be deferred and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition, $0.00, of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 9/01/13, the Lender shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The Unpaid Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $ 212,821.02. Interest at the rate of 2.00000% will begin to accrue on the Interest Bearing Principal Balance as of 12/01/13 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 01/01/14. My payment schedule for the modified Loan is as follows until the loan reaches the Maturity Date when the final balloon payment will become due and payable is as follows

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.00% | 12/01/13 | $644.48 | $355.78, may adjust periodically | $1,000.26, may adjust periodically | 01/01/14 | 60 |
| 6 | 3.00% | 12/01/18 | $748.73 | May adjust periodically | May adjust periodically | 01/01/19 | 12 |
| 7 | 4.00% | 12/01/19 | $858.78 | May adjust periodically | May adjust periodically | 01/01/20 | 12 |
| 8-40 | 4.375% | 12/01/20 | $901.07 | May adjust periodically | May adjust periodically | 01/01/21 | 395 |
| 40 | 4.375 | 12/01/53 | $33,911.55 | May adjust periodically | May adjust periodically | 01/01/53 | 1 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

Any terms of the Note or Security Instrument which would result in any further interest rate reduction, including without limitation a Timely Payment Rewards program, or Smart Step program, are hereby deleted and will not be applicable to the Note as modified herein. Further, any terms of the Note or Security Instrument which provide for an adjustment of the interest rate are hereby deleted.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification,

Exhibit A

the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATIED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

4. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

5.. I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4. **Additional Agreements.** I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

   B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

   C. To comply, except to the extent that they are modified by this Agreement, with all covenants, Agreements, and requirements of Loan Documents including my Agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, Impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

   D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all

Exhibit A

Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment withinsuch time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents as modified by this Agreement are duly valid, binding Agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If

Exhibit A

Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination Agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance andnot withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination Agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter Agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

M. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Agreement shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the Modified

Exhibit A

Principal Balance.

O. I acknowledge that the Deferred Principal Balance set forth above may or may not be reflected in the loan amount reported by Lender to any credit reporting agency or reported as part of the balance on any receipt or statement issued by Lender, but nevertheless I acknowledge that such Deferred Principal Balance is due and payable as set forth above.

P. Notwithstanding the foregoing, to the extent personal liability has been discharged in bankruptcy with respect to any amount payable under the Note, as modified herein, nothing contained herein shall be construed to impose personal liability to repay any such obligation where any obligations have been so discharged. If any bankruptcy proceeding is pending or completed during a time period related to entering this Agreement, I understand that I enter this Agreement voluntarily and that this Agreement, or actions taken by the Lender in relation to this Agreement, does not constitute a demand for payment or any attempt to collect any such obligation.

[ ] MERS LOAN. If this box is checked, the loan evidenced by the Note and secured by the Security Instrument was assigned to or the Security Instrument was prepared in the name of Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of 1901 E Voorhees Street Suite C, Danville, IL 61834 or P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

EXECUTED effective as of the day and year first above written.

BECKIE BERGERON

Date

CitiMortgage, Inc.

By: _____

Date

# Exhibit A